*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MANVILLE/WOLFE, Minors.

UNPUBLISHED
May 7, 2020

No. 350242
St. Joseph Circuit Court
Family Division
LC No. 18-000432-NA

Before: MARKEY, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Respondent, the mother of three minor children, appeals by right the trial court's order that was entered after a preliminary hearing, MCR 3.965. The order placed the children in protective custody and formally removed them from respondent's home. We affirm.

## I. FACTS

This case arises from a petition asking the trial court to take jurisdiction over the minor children under MCR 712A.2(b)(2) and to issue an order removing the children from respondent's home.[1] At the preliminary hearing, a Children's Protective Services (CPS) worker who investigated various allegations testified that petitioner, the Department of Health and Human Services (DHHS), initially became involved with the family in May 2018. The investigation was prompted by allegations that respondent had been leaving her three young children alone at home while she went to Chicago. Respondent had also tested positive for methamphetamine and was allegedly involved in an "unhealthy" relationship with "Ivan," who reportedly used drugs with her and caused the children great anxiety. A neglect case was substantiated, and the court became involved. During the year-long proceedings, the children resided with their respective fathers. Services were provided to the family, including counseling for respondent and the two older children, a trauma assessment for AM, the oldest child, joint counseling sessions with respondent

---

[1] MCL 712A.2(b)(2) authorizes a court to exercise jurisdiction over a minor "[w]hose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in."

and the children, and supervised parenting time. Respondent participated in services and showed progress, so on April 25, 2019, the court dismissed the case.

On June 10, 2019, however, CPS received new allegations that respondent had physically assaulted AM during her parenting time. The CPS worker conducted interviews of respondent and the children, consulted with the children's therapist and the worker assigned to the previous case, and met with the fathers to develop a safety plan for the children during the investigation. It was decided that the children would stay with their fathers, and respondent cooperated by not seeking visitation. AM disclosed in a forensic interview that respondent slapped, choked, and kicked her, and that Ivan was present in the home again, which made her very nervous and fearful. AM also reported that respondent was sleeping excessively, which behavior she exhibited before the children's prior removal. Respondent's middle child, MW, told the CPS worker that he saw respondent choke AM, that Ivan was at the home which made him nervous, and that he did not feel safe there. Both AM and MW indicated that they were afraid of respondent.

AM's and MW's therapist, who had been working with the children since September 2018 as a result of the previous neglect case and had conducted joint counseling sessions with respondent and the children, was "very concerned" about the recent allegations. The therapist recommended renewed court involvement with supervised visits. The therapist indicated that the children had experienced trauma and distrust in connection with respondent in the past and that AM believed that respondent blamed her for the court's involvement in their lives. The therapist further observed that respondent "never fully accepted responsibility" for the past incidents, that she had an anger issue, that the recent occurrence was traumatizing for the children, that having Ivan in the home was a "huge trigger" for the children, that AM perceived respondent as reverting to her old ways, and that the older two children were afraid of respondent. MW further disclosed to the therapist that he was concerned about being in the home without AM to protect him.

Respondent denied choking and hitting AM and denied that the younger children had heard or seen anything of that sort. She admitted to the CPS worker that Ivan had been in her home but explained that he "just showed up" and took her car to Chicago to fix it, brought it back, spent the night, and then watched the younger children while respondent took AM to school. CPS was concerned that respondent had reverted to her old behaviors and asked her to submit a drug screen—she initially refused to comply.[2] CPS did not provide any other services to respondent during the investigation.

On July 15, 2019, following the month-long CPS investigation, the instant petition was filed. At the preliminary hearing, the CPS worker testified that she believed respondent had physically and emotionally abused AM, that it could not be guaranteed that the children would be safe in respondent's care, and that removal would be in their best interests. Following the preliminary hearing, the trial court entered an order taking the children into protective custody, authorizing the petition, and removing the children from respondent's home. The children were released to their respective fathers under the supervision of the DHHS, and respondent was allowed

---

[2] Respondent agreed to submit to a drug screen about a month later, just three days before the preliminary hearing. The results had not been returned by the time of the hearing.

supervised parenting time. Especially pertinent to this appeal, the court found that under the circumstances, reasonable efforts had been made to prevent the removal of the children from respondent's home, including interviews with the children, respondent, the fathers, the former caseworker, and the children's therapist, along with such ongoing services as offering respondent a drug screen.[3]

Respondent appeals by right the removal order pursuant to MCR 3.993(A)(1), arguing that the DHHS failed to make reasonable efforts to prevent the children's removal from her home considering that no services were provided during the month-long investigation.

## II. STANDARD OF REVIEW

This Court reviews for clear error a trial court's factual findings in child protective proceedings, including the determination that the DHHS engaged in reasonable efforts. See *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "A finding is 'clearly erroneous' if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks, citation, and alteration omitted). When applying the clearly erroneous standard, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## III. ANALYSIS AND HOLDING

A court may take a child into protective custody if it finds, in part, that, "[c]onsistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child." MCR 3.963(B)(1)(c). In general, if pretrial placement is ordered after the preliminary hearing, "[r]easonable efforts findings must be made." MCR 3.965(C)(4). "In making the reasonable efforts determination under this subrule, the child's health and safety must be of paramount concern to the court." *Id.* Respondent maintains that the trial court's reasonable efforts' determination was clearly erroneous because the DHHS failed to provide her any services during the month long CPS investigation of the most recent allegations. We disagree.

The instant proceedings cannot be viewed in a vacuum; some consideration must be given to the previous year-long proceedings that ended shortly before respondent once again came to the attention of the DHHS. And in the earlier case, services were provided to respondent and the children, including one-on-one counseling, joint counseling, drug screens, and supervised parenting time. When the new investigation was opened, the DHHS interviewed the children and respondent about the allegations, reached out to the children's therapist and prior caseworker to ascertain whether the children could safely remain in the home, asked respondent to submit to drug

---

[3] The trial court checked the box on the July 15, 2019 removal order indicating that "[c]onsistent with the circumstances, reasonable efforts were made to prevent or eliminate removal of the child(ren) from the home."

screening, and arranged for a temporary safety plan with the fathers. When the services provided and steps taken by the DHHS during the two proceedings are taken into consideration, and being mindful that the children's health and safety were of paramount concern, we believe it becomes quite evident that the DHHS engaged in reasonable efforts to prevent or eliminate the need for removal of respondent's children. Despite these reasonable efforts, the circumstances demanded removal of the children. Accordingly, we hold that the trial court did not clearly err with respect to its finding on reasonable efforts.[4]

We affirm.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Mark T. Boonstra

---

[4] Respondent additionally asks this Court to consider that her youngest child "was not offered any services and it is unclear what risk of harm there [is] to him given he had not expressed any fear" of her. But that child was only four years old at the time of the preliminary hearing and had not yet been referred to counseling because of his tender age. Nevertheless, for the same reasons and concerns raised by the older children's therapist and the CPS worker, the youngest child's safety could not be assured in respondent's home. See *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (how a parent treats one child is probative of how that parent is apt to treat other children).